UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD SARRO, an individual, | ) |
| Plaintiff, | ) Case No.: 2:16-cv-01756-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| NEVADA STATE BANK, a division of ZB, N.A., a national association; DOES 1-10; and ROE CORPORATIONS 1-10, | ) |
| Defendants. | ) |

Pending before the Court is a Motion to Remand, (ECF No. 7), filed by Plaintiff Richard Sarro ("Plaintiff"). Defendant Nevada State Bank ("Defendant") filed a Response, (ECF No. 14), and Plaintiff filed a Reply, (ECF No. 15).

Also pending before the Court is Defendant's Motion to Dismiss, (ECF No. 5). Plaintiff filed a Response, (ECF No. 8), and Defendant filed a Reply, (ECF No. 13). For the following reasons, the Motion to Remand is DENIED, and the Motion to Dismiss is GRANTED in part and DENIED in part.

**I.      BACKGROUND**

This case arises out of Defendant's alleged breach of an oral agreement to modify Plaintiff's mortgage loan. On December 23, 2009, Plaintiff purchased real property located at 9145 Tesoras Drive, #401, Las Vegas, NV 89144 ("Property"), giving the lender, Defendant, a promissory Note for $1,016,289.00 secured by a Deed of Trust against the Property. (Compl. ¶ 5); (Ex. A to MTD ("Deed of Trust"), ECF No. 5-1); (Ex. B to MTD ("Note"), ECF No. 5-

2).[1]   According to the Note, Plaintiff's initial monthly payments were $5,770.38 plus 5.5% annual interest. (*See* Note at 2).

Plaintiff alleges that he "remained current on his loan . . . until approximately September of 2011." (Compl. ¶ 19).  Plaintiff alleges that he "contacted" Marv Rosenthal ("Rosenthal"), then Senior Vice President of Mortgage Lending at one of Defendant's branch locations, and "told him that . . . [he] could no longer afford to make payments on the note." (*Id.* ¶¶ 16, 20). Plaintiff further alleges that Rosenthal responded, "I have to keep you in this unit, so tell me what you can afford." (*Id.* ¶ 21).  Plaintiff alleges that he and Rosenthal negotiated "a monthly payment of approximately $2,500 per month[,] . . . 3% with interest only payments," rates which Rosenthal promised to maintain until January 2017. (*Id.* ¶ 21).  However, according to Plaintiff, "Rosenthal stated that he could only offer the initial loan modification period of eighteen months 'on paper' and that after that he could only offer Plaintiff six (6) month extensions, which he would do until 2017." (*Id.* ¶ 23).

On December 1, 2011, Plaintiff executed the first Loan Modification Agreement, adjusting his annual interest rate to 3% and reducing his monthly payments to interest-only payments of $2,533.68 until June 1, 2013. (Ex. C to MTD, Ex. 5-3).  Following the expiration of the first Loan Modification Agreement, Plaintiff alleges that he contacted Rosenthal regarding a six-month extension. (Compl. ¶ 25).  On June 1, 2013, Plaintiff executed the second Loan Modification Agreement with essentially the same terms as the previous modification for the period ending December 1, 2013. (Ex. D to MTD, Ex. 5-4).  Plaintiff alleges that he again

---

[1] While courts do not typically consider material beyond the pleadings in evaluating a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Because the Note, Deed of Trust, and Loan Modification Agreements are publicly recorded in the Clark County Recorder's office, the Court takes judicial notice of these documents. *See* FRE 201; *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).

contacted Rosenthal after the expiration of the second Loan Modification Agreement only to learn that Rosenthal was no longer employed by Defendant. (*Id.* ¶ 28).  Thereafter, Plaintiff alleges that he was unable to secure a new loan modification with Defendant. (*Id.* ¶ 35).

Plaintiff alleges that because Defendant failed to permit any further modifications of the Note on the terms discussed with Rosenthal, "he soon became delinquent on the mortgage loan." (*Id.* ¶¶ 30–32).  Plaintiff further alleges that Defendants initiated foreclosure proceedings and set a foreclosure date for July 1, 2016. (*Id.* ¶¶ 35–37).  Based on these allegations, Plaintiff filed his Complaint in the Eighth Judicial District Court, in Clark County, Nevada. (*See generally id.*).  On June 29, 2016, the state court granted Plaintiff's motion for a temporary restraining order enjoining Defendant from proceeding with foreclosure. (Ex. A to Notice of Removal ("Order") at 16, ECF No. 1-1).  On July 25, 2016, Defendant removed the case to this Court. (*See* Pet. for Removal, ECF No. 1).

Based on the allegations in the Complaint, Plaintiff alleges the following causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) unjust enrichment; (4) fraudulent and intentional misrepresentation; and (5) declaratory relief. (Compl. ¶¶ 39–73).  Plaintiff seeks damages in excess of $10,000, attorneys' fees, punitive damages, and declaratory relief. (*Id.* ¶ 74).  In the instant motions, Plaintiff seeks to remand this case back to state court, and Defendant seeks to dismiss all claims asserted by Plaintiff.

## II. <u>LEGAL STANDARD</u>

### A. Motion to Remand

Federal courts are of limited jurisdiction and possess only that jurisdiction which is authorized by either the Constitution or federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Pursuant to CAFA, a federal district court has jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs

is a citizen of a State different from any defendant," so long as the class has more than 100 members. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B).  Generally, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.*  As noted above, to meet the diversity requirement under CAFA, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  "Thus, under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

        B.        **Motion to Dismiss**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.   DISCUSSION

#### A.   Motion to Remand

Neither party disputes that diversity of citizenship exists. Instead, the instant dispute centers on whether the amount in controversy is met. The amount in controversy is established by looking to the face of the pleadings. *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). When the amount in controversy is not apparent from pleadings, however, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 347 (1977). Here, the parties dispute the "object" of Plaintiff's suit. Plaintiff maintains it is Defendant's "performance under the contract for a loan modification." (Mot. to Remand 3:20). Defendant contends the object of the litigation is "the subject property." (Resp. 5:15–16). Under either interpretation, however, the amount in controversy exceeds $75,000.

Turning first to Plaintiff's argument, "if a plaintiff asserts that he is entitled to a wrongfully denied loan modification, the amount put into controversy is the difference between

the value of the existing loan and the proposed modified loan." *Johnson v. Wells Fargo Home Mortg.*, No. CV 12-00144 GAF SPX, 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012); *see also Morales v. Select Portfolio Servicing, Inc.*, No. CV 14-7982-GHK PJWX, 2014 WL 6851435, at *4 (C.D. Cal. Dec. 2, 2014) ("Because Plaintiff alleges he was wrongfully denied a loan modification on several occasions, his damages would likely amount to the difference between his existing loan and any modified loan to which he may have been entitled.").[2] Under the Note, Plaintiff's monthly payments were $5,770.38 through January 1, 2017. (*See* Note, ECF No. 5-2). Plaintiff alleges, however, that pursuant to the terms of the oral agreement with Rosenthal, his monthly payments should be approximately $2,500 until 2017. (Compl. ¶ 21). Accordingly, for the period between January 1, 2014, and January 1, 2017, the difference between the value of the existing monthly payments, $207,733.68, and the approximate proposed modified monthly payments, $90,000, is $117,733.68, well within the jurisdictional limits.

Alternatively, if the object of the litigation is to halt foreclosure proceedings, as Defendant argues, then the amount in controversy is measured by the value of the property at issue. *See Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973) (treating entire value of real property as amount in controversy in action to enjoin foreclosure sale). Clark County property records indicate that the Property has a taxable value of $1,384,894.00. (Ex. B to Pet. for Removal, ECF No. 1-2). As a result, under either parties' construction of the object

---

[2] Plaintiff points out that other courts have rejected an aggregation method in similar cases. *See, e.g.*, *Malaguit v. Ocwen Loan Servicing, LLC*, No. 5:15-cv-01621-CAS (DTBx), 2015 WL 5884856 at *4 (C.D. Cal. Oct. 6, 2015). These courts point to the speculative nature of the damages in those cases as a basis for their holding. *Id.* ("[D]efendants' calculations regarding the difference between the amounts due under the Agreement that Plaintiff seeks to enforce and any other alleged amount are based upon ambiguous language in the complaint and are, at best, highly speculative."). In contrast, the alleged damages in this case are neither ambiguous nor speculative. Plaintiff enumerates definite terms of the alleged oral contract, and Defendant provides "summary-judgment-type evidence" in support of its calculations. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended* (Feb. 13, 2006).

of the litigation, the amount in controversy exceeds $75,000, and jurisdiction is therefore proper.

### B. Motion to Dismiss

In the instant Motion to Dismiss, Defendant seeks to dismiss the following claims alleged in the Complaint: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) fraudulent or intentional misrepresentation; and (5) declaratory relief. (*See* MTD 14:16–18, ECF No. 5). The Court considers each of these claims in turn.

#### 1. *Breach of Contract*

Plaintiff alleges that he entered into an oral contract to modify his home loan with Rosenthal and that Defendant breached the contract by failing to modify the loan and attempting to foreclose on the property.[3] (Compl. ¶¶ 23, 35–38). Defendant argues that because the alleged oral agreement violates the statute of frauds, Plaintiff has failed to allege that the parties formed a valid contract. (MTD 7:18–11:5).

To state a claim for breach of contract in Nevada, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *See Calloway v. City of Reno*, 1993 P.2d 1259, 1263 (2000). Nevada's statute of frauds states in relevant part, "[n]o estate or interest in lands, other than for leases for a term not exceeding 1

---

[3] In his Response, Plaintiff changes tack and alleges that he did not rely on an oral promise by Defendant but rather a "written agreement." (Resp. 5:12–19, 7:20–8:2, ECF No. 8). Plaintiff submits a bank statement from August 17, 2015, in support of this new claim. (*See* Ex. 1 to Resp.). Putting aside the various factual discrepancies between the alleged agreement and the bank statement, (*see* Reply 4:5–23, ECF No. 13), the Court limits the instant analysis to facts actually alleged in the Complaint. *See* Fed. R. Civ. Pro. 12(d); *Pinkney v. Am. Med. Response, Inc.*, No. 2:08-cv-01257-RLH-GWF, 2009 WL 2424574, at *2 (D. Nev. Aug. 5, 2009).

year, . . . shall be created, granted, assigned, surrendered or declared after December 2, 1861, unless by act or operation of law, or by deed or conveyance, in writing[.]" NRS § 111.205. As a result, an oral agreement regarding real property is void and not final until put in writing. *Waters v. Weyerhaeuser Mortg. Co.*, 582 F.2d 503, 506 (9th Cir. 1978) (applying NRS §§ 111.205, 111.210). "Modifications to deeds of trust or promissory notes are . . . subject to the statute of frauds." *Hampton v. Countrywide Home Loans, Inc.*, No. 2:10-cv-01775-RLH-GWF, 2011 WL 1792743, at *2 (D. Nev. May 11, 2011). Thus, the alleged oral contract violates the statute of frauds, and Plaintiff claims the breach of a contract that does not actually exist. The Court therefore GRANTS the Motion as to this claim with prejudice; however, to the extent Plaintiff intends to allege breach of a written contract, the Court will grant Plaintiff leave to amend.

### 2. *Breach of the Covenant of Good Faith and Fair Dealing*

Plaintiff claims that Defendant "entered into a valid contract whereby Defendant agreed to provide loan extensions every six months" and breached the "duty of good faith and fair dealing owed to the Plaintiff when the Defendant refused to honor the [oral Loan Modification Agreement], moved forward with foreclosure proceedings and by failing to give the required six-month loan extension to Plaintiff," thereby causing Plaintiff to suffer damages. (Compl. ¶¶ 49–59).

To succeed on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must first show that "plaintiff and defendant were parties to an agreement." *Desio v. Russell Rd. Food & Beverage, LLC*, No. 2:15-cv-01440-GMN-CWH, 2016 WL 4721099, at *4 (D. Nev. Sept. 9, 2016); *see also Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (per curiam). Because the alleged oral contract violates the statute of frauds, as discussed *supra*, this claim also fails. Accordingly, the Court GRANTS Defendant's Motion to Dismiss this claim with leave to amend.

### 3. *Unjust Enrichment*

Plaintiff alleges "that the Defendant has been unjustly enriched, because Defendant entered into the [oral Loan Modification Agreement] and now has determined to cease abiding by its terms." (Compl. ¶ 61). Further, Plaintiff claims that "Defendant is unjustly taking the [Property] from the Plaintiff." (*Id.* ¶ 62).

To set forth a claim for unjust enrichment, a plaintiff must allege that a defendant unjustly retained money or property of another against fundamental principles of equity. *Laughlin v. MidCountry Bank*, No. 3:10-cv-0294-LRH-VPC, 2011 WL 2174972, at *1–4 (D. Nev. June 3, 2011). However, an action for unjust enrichment cannot lie when there is an express written contract that governs the parties' relationships. *Id.* (citing *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)). Consequently, courts of this District have routinely held that a homeowner cannot bring a claim for unjust enrichment where a deed of trust and mortgage note already govern the relationship of the parties. *See, e.g.*, *Laughlin*, 2011 WL 2174972, at *4.

Here, Plaintiff signed a Note and a Deed of Trust and defaulted on those documents. (*See* Compl. ¶¶ 19, 32). These express contracts explicitly govern the rights of the parties and allow for the acceleration of the loan and sale of the Property at a trustee's sale in the event of a default. *See Laughlin*, 2011 WL 2174972, at *4; *LeasePartners Corp.*, 942 P.2d at 187–88. Thus, Plaintiff cannot make a claim in equity for unjust enrichment, and the Court GRANTS the Motion as to this claim with prejudice.

### 4. *Fraudulent or Intentional Misrepresentation*

To succeed on a claim for fraud or intentional misrepresentation, a plaintiff must show: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; (3) justifiable reliance; and (4) damages that result from this reliance. *See Nelson v. Heer*, 163 P.3d 420, 426

(Nev. 2007); *Collins v. Burns*, 741 P.2d 819, 821 (1987).  Furthermore, a claim of "fraud or mistake" must be alleged "with particularity." Fed. R. Civ. P. 9(b).  A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).

In his Complaint, Plaintiff alleges he "contacted [Rosenthal] at the bank and told him that . . . [he] could no longer afford to make the payments on the note." (Compl. ¶ 20).  Plaintiff further alleges that Defendant, via Rosenthal, "made a false representation when it represented to the Plaintiff that he would receive six-month loan extensions until 2017 and would only pay 4% interest only payments until that time." (Compl. ¶ 67).  Plaintiff alleges that these statements were false because following the six-month extension period that expired in December 2013, Defendant denied Plaintiff any additional extensions at these terms. (*Id.* ¶¶ 27, 29).  Plaintiff alleges that Defendant intended for Plaintiff to rely on this misrepresentation to prevent Plaintiff from defaulting and "kill[ing] the sales momentum that the [condominium] project ha[d] just started to generate." (*Id.* ¶¶ 20–21).  Therefore, the Complaint alleges the content, the identity of the party, and the circumstances associated with the alleged misrepresentation.  Plaintiff's Complaint, however, does not specifically allege the time nor the method by which the misrepresentation was communicated to provide sufficient context surrounding the conversation between Plaintiff and Rosenthal to effectively provide notice to Defendant of the specific misrepresentation alleged in the Complaint.[4]  The Court therefore GRANTS Defendant's Motion as to this claim with leave to amend.

---

[4] Defendant moves to dismiss Plaintiff's intentional misrepresentation claim on the grounds that Plaintiff fails to allege how he justifiably relied on Defendant's purported oral promise in light of the "Notice of No Oral Agreements" provision in each Loan Modification Agreement.  However, "integration clauses do not bar claims for misrepresentation." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322–23 (1992); *see also Copper Sands*

### 5. *Declaratory Relief*

Plaintiff's claim for declaratory relief does not allege a substantive cause of action. *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Manderville v. Litton Loan Servicing*, No. 2:10-cv-1696-JCM-GWF, 2011 WL 2149105, at *3 (D. Nev. May 31, 2011).  Asking for declaratory relief is nothing more than requesting a remedy.

Because Plaintiff requests declaratory relief based on the alleged breach of the oral modification agreement and because he has failed to state a viable claim as to that allegation, the Court GRANTS Defendant's Motion and dismisses Plaintiff's request for declaratory relief without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

*Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10-cv-00510-GMN, 2013 WL 3270430, at *7 n.4 (D. Nev. June 26, 2013).  Further, whether reliance is reasonable is a question of fact. *Id.*  Accordingly, the Court declines address the reasonability of Plaintiff's alleged reliance at this time.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 7), is **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims for breach of oral contract and unjust enrichment are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claims for breach of the covenants of good faith and fair dealing, fraudulent or intentional misrepresentation, and declaratory relief are **DISMISSED without prejudice.**  Plaintiff shall have twenty-one days from the date of this Order to file an amended complaint on these claims.  As discussed in this Order, Plaintiff's amended complaint may include a claim for breach of a written contract.  Failure to file an amended complaint by this date shall result in the dismissal of Plaintiff's claims with prejudice.

**DATED** this __23__ day of November, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge